## PENNSYLVANIA RD CO v GIOVANNI

Ohio Appeals, 1st Dist, Hamilton Co

No 4795. Decided July 31, 1935

Maxwell & Ramsey, Cincinnati, for plaintiff in error.

Alcorn & Alcorn, Cincinnati, for defendant in error.

**OPINION**

By ROSS, PJ.

The evidence is wholly inconsistent with the judgment of the court. The judgment is explained, however, by the statement of the court, as it appears in the record:

"Practically all of the surgeons and physicians that have examined or had anything to do with the injury to the plaintiff's leg are of the opinion that there has been a complete recovery of the leg. The preponderance of the evidence of the de-fendant's surgeons and physicians is, however, that there is some limitation in the flexure use of this leg. They pretty well agree that there is a twenty per cent limitation to normal use of the leg in one direction, that is in bending the leg.

"Now there is another factor that the court is convinced of and that is that the plaintiff is in good faith in his sense of feeling that his leg is in such a condition that he could perform the work of his old job, that of trucker in the freight depot. It is a laborer's job, all kinds of freight are to be handled—some of it is not heavy and some of it is very heavy. His boss said that the sheet iron, billets of steel, that were shipped, at times, the weight is from five hundred to two thousand pounds. The testimony is that this billet of steel that he was rolling at the time of his injury, either from the cars to the depot or from the depot to the cars, weighed eleven hundred pounds. And while, as the superintendent says and I have no doubt it is true, that a great deal depends upon the skill in which they operate the truck and the way they load the truck, nevertheless it is a laborer's job. It requires a man in good physical strength and condition, and above everybody else that knew that job and what its requirements were at times, the plaintiff knew more about what that requires than the surgeons or anybody that testified, unless it might be the superintendent.

"Now what I started to say is, I don't believe that the plaintiff is attempting to deceive the court or to deceive the officials of the Relief Department. If the surgeons are correct that this injury is completely recovered, that he has completely recovered of his injuries, and Dr. Heston says that even if there was some limitation in the bending of the leg that that in itself would not affect his ability to do this work or to do any other kind of work. Of course, it is entirely true that some people can bend their legs more than others, and his idea is that even if there was some limitation in the normal use of this leg that that would not interfere with him doing his work.

"From the plaintiff's standpoint I think that at least he feels he could not do that work. Whether that is wholly psychic, whether that is just an idea of his, a mental obsession, nevertheless I feel that he has it, and if he has such an obsession of that kind, that is one of the results of this injury, even though he has had a complete recovery. Mentally speaking there has not been a complete recovery, unless he is malingering; and I do not feel that is the

case. For eleven years he was a constant, conscientious employee of this company; there was no evidence at all that the plaintiff has been engaged in any fraud, or that he has been a chisler in his work. He stands before the court as an honest and trustworthy man, and it may be entirely true—I have perfect confidence in Dr. Carothers and Dr. Roof, and all the other doctors that testified here that they are giving their honest opinion that this man has no physical defect that would prevent him from performing his old job—I asked Dr. Heston about this psychic situation because we are all familiar with cases of people thinking they are sick and physicians and surgeons examining them and can find no indication of any sickness; it is purely a mental matter and yet it is just as serious and as effective in influencing those people as if there were some sickness.

"Now, nothing of that kind, whether it was mental or physical, in so far as the proof shows, this plaintiff ever had before. The court is satisfied that there is either a physical—you know there is a joke which they get off on surgeons once in a while where a person dies although the operation was a success. I have looked at corpses too in which they said the operation was a success. I think it was a success in this case and yet I think there is a conscientious feeling on the part of the plaintiff that he could not perform that job and the superintendent of the depot said in effect, that there were other jobs at the time probably, but the order of return to duty said that he was to take his old job so that he had no authority in the matter except to put him back to his old job."

We agree with the trial court that the plaintiff has fully recovered from every effect of his injury. He may or may not honestly possess the idea that he cannot work. Whether he does or does not honestly possess such an idea is immaterial. No clause in his contract can be construed to require the payment of relief benefits because the employee is obsessed with the idea of a limitation he does not actually experience.

This being our view of the matter, the judgment will be reversed, and the cause remanded for a new trial.

MATTHEWS and HAMILTON, JJ; concur.